UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

Case No. 3:20-cr-20
Case No. 3:22-cv-81

vs.

ROBERT CARTWRIGHT,

      Defendant-Movant.

District Judge Michael J. Newman

---

**ORDER: (1) DENYING DEFENDANT-MOVANT'S MOTION TO VACATE HIS CONVICTION (Doc. No. 60); (2) DENYING A CERTIFICATE OF APPEALABILITY; (3) CERTIFYING THAT ANY APPEAL WOULD BE OBJECTIVELY FRIVOLOUS AND FINDING THAT *IN FORMA PAUPERIS* STATUS SHOULD BE DENIED ON APPEAL; AND (4) CLARIFYING THAT THIS CASE REMAINS TERMINATED ON THE DOCKET**

---

      This matter is before the Court on Defendant-Movant Robert Cartwright's ("Cartwright") *pro se* motion to vacate his conviction under 18 U.S.C. § 2255. Doc. No. 60. The Government, as Plaintiff-Respondent, filed its opposition. Doc. No. 63. Cartwright replied. Doc. No. 64. This matter is now ripe for review.

**I.**

      On July 23, 2020, Cartwright, through counsel, pled guilty to the knowing and intentional possession of fentanyl with intent to distribute, 21 U.S.C. §§ 841(a)(1), (b)(1)(B). Doc. No. 39. His plea agreement noted the following facts.[1]

---

[1] At the sentencing hearing, the Court accepted the plea agreement in full after being satisfied that Cartwright entered into the agreement knowingly and voluntarily. Doc. No. 62 at PageID 326; *see United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996).

On October 17, 2019, law enforcement officers executed a search warrant at Cartwright's residence in Dayton, Ohio where he "was the sole occupant[.]" Doc. No. 39 at PageID 119. Inside, they discovered several items related to drug trafficking, including "a digital scale and measuring cup both with suspected residue of controlled substances." *Id.* Fentanyl was hidden "in multiple places" throughout, including "two bags in the kitchen trash can, a chunk on the mudroom floor, [and] bags on a chair in a den." *Id.* This amounted to a "net weight of . . . 673.73 grams" of fentanyl. *Id.* Likewise, officers retrieved "a drug press, two firearms, and $42,424 in U.S. currency." *Id.* This lump of cash, the plea agreement noted, "was property intended to be used to commit and facilitate the commission of the purchase and sale of fentanyl." *Id.*

The Probation Department prepared a Final Presentence Investigation Report ("PSR") on September 24, 2020. Doc. No. 41. To calculate Cartwright's base offense level under the Sentencing Guidelines, Probation first turned to § 2D1.1(a)(5)—setting a base offense level based on the quantity of drugs sold. *Id.* at PageID 152. Relying on Application Note 5 of § 2D1.1, Probation converted the $42,424 into an equivalent 652.68 grams of fentanyl. Doc. No. 41 at PageID 152–53. Adding this amount with the 673.73 grams discovered in the residence, the PSR attributed 1.3264 kilograms of fentanyl to Cartwright. *Id.* This resulted in a base offense level of thirty-two. *Id.* at PageID 153; *see* Doc. No. 62 at PageID 328.

Officers searching Cartwright's residence uncovered a loaded Glock 19 handgun and an AR-15 rifle. Doc. No. 41 at PageID 153; *see* Doc. No. 39 at PageID 119. For this, Probation added two points to Cartwright's base offense level for possessing a dangerous weapon. § 2D1.1(b)(1). Thus, Probation raised Cartwright's level to thirty-four. Doc. No. 41 at PageID 153.

2

Finally, Probation determined that Cartwright maintained a premises for drug manufacture under § 2D1.1(b)(12). *Id.* Probation noted that the search revealed several indicia of drug dealing—fentanyl, guns, scales, and cash. *Id.* Probation thus found that an enhancement applied, raising Cartwright's offense level to thirty-six. *Id.* at PageID 153–54. After subtracting three points for two unrelated decreases, Cartwright's total offense level was thirty-three. *Id.* at PageID 154. Once his criminal history score was accounted for, Cartwright's Guideline sentence ranged between 135 to 168 months. *Id.* at PageID 167.

Cartwright's plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(A), contemplated incarceration ranging from sixty to 480 months, with four years of supervised release. Doc. No. 39 at PageID 114. During sentencing, the Court heard arguments from Cartwright's counsel about why mitigating circumstances supported a sixty-month sentence. Doc. No. 62 at PageID 346–51. After evaluating the 18 U.S.C. § 3553(a) factors, the Court sentenced Cartwright to ninety-six months incarceration followed by four years of supervised release. *See id.* at PageID 356–57; Doc. No. 53; Minute Entry, 3:20-cr-20 (S.D. Ohio Mar. 23, 2021).

Cartwright, in his plea agreement, waived most of his appellate rights. Doc. No. 39 at PageID 116. He retained the right to appeal if the imposed sentence exceeded the statutory maximum or if he was denied effective assistance of counsel.[2] *Id.* He acknowledged that he discussed with his counsel the law applicable to his case when he signed the plea agreement. *Id.* at PageID 117.

---

[2] While Cartwright waived his right to attack his sentence collaterally, this does not bar his ineffective assistance claims. *See Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022); *Hamilton v. United States*, 566 F. App'x 440, 444–45 (6th Cir. 2014).

Cartwright filed this § 2255 motion on March 24, 2022—twelve months[3] into his ninety-six-month sentence. *See* Doc. No. 60. Cartwright alleges that his counsel was constitutionally ineffective. *Id.* at PageID 310–14. Specifically, he argues that his counsel should have: (1) objected to the drug weight conversion; (2) objected to the firearms enhancement; (3) objected to the drug premises enhancement; and (4) argued and admitted mitigating evidence at sentencing. *Id.* In turn, he argues that if his counsel objected and presented mitigating evidence, he would have received a lower sentence. *See id.*

## II.

"In § 2255, Congress gave federal criminal defendants an additional chance to challenge their convictions and sentences." *United States v. Augustin*, 16 F.4th 227, 231 (6th Cir. 2021). If "a district court determines that a defendant's conviction is unlawful, it must 'vacate and set the judgment aside.'" *Id.* (quoting 28 U.S.C. § 2255(b)); *see also United States v. Flack*, 941 F.3d 238, 242 (6th Cir. 2019) (Murphy, J., concurring). Section 2255 offers four grounds upon which to claim relief: (1) the sentence violates the Constitution or the laws of the United States; (2) the Court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence is subject to collateral attack. 28 U.S.C. § 2255(a). Relief is warranted only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence" on the proceedings. *Jefferson v. United States*, 730 F.3d 537, 549–50 (6th Cir. 2013) (cleaned up) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

"To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) 'counsel's performance was deficient'; and (2) 'the deficient performance prejudiced the

---

[3] Cartwright filed his motion within the timeframe allowed by 28 U.S.C. § 2255(f). *See, e.g.*, *Sanchez-Castello v. United States*, 358 F.3d 424, 428 (6th Cir. 2004).

4

defense.'" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotations omitted). To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

"In a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Court evaluates *pro se* post-conviction petitions on a more lenient standard. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). They are "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards" than filings by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also, e.g.*, *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) ("[A]llegations in a *pro se* complaint are held to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))). Nonetheless, the "duty to be less stringent with [a] *pro se* [pleading] does not require [the Court] to conjure up unplead allegations." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Merritt v. Faulkner*, 697 F.2d 761, 767 (7th Cir. 1983)).

## III.

Liberally construing his petition, Cartwright's claims fail as a matter of law. The sentencing enhancements would have applied notwithstanding his counsel's objections, so he suffered no prejudice. Likewise, his counsel sufficiently presented mitigating evidence at sentencing. Because the record clearly supports these conclusions, an evidentiary hearing is unnecessary.

### A. Drug Weight Conversion (Grounds One and Four)

Cartwright first argues his counsel was constitutionally ineffective because counsel did not object when Probation applied § 2D1.1 and converted the cash into drug weight. Doc. No. 60 at PageID 310, 314. The Court disagrees. Cartwright suffered no prejudice because the enhancement would have applied notwithstanding any objection.

Under § 2D1.1, the Court, for sentencing purposes, refers to the Drug Quantity Table to set the base offense level for a defendant guilty of drug trafficking. U.S.S.G. § 2D1.1(a)(5). Courts may "conver[t] . . . seized funds into an equivalent amount of drugs, as long as the government proves by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio, that is, the price per unit of drugs." *United States v. Salas*, 455 F.3d 637, 642 (6th Cir. 2006) (internal citation omitted) (citing *United States v. Keszthelyi*, 308 F.3d 557, 577 (6th Cir. 2002)).

Cartwright, in his plea agreement, agreed that he should forfeit the $42,424 because it "was property intended to be used to commit and facilitate the commission of the purchase and sale of fentanyl." Doc. No. 39 at PageID 119. This alone supports Probation's drug-weight conversion. *Cf. United States v. Gilliam-French*, 692 F. App'x 270, 272–74 (6th Cir. 2017) (affirming district court's factual finding converting the drug proceeds found in his house into drugs for sentencing calculation). Likewise, considering the police found this large sum in a residence filled with drugs,

6

guns, and drug dealing implements, it was sufficiently related to drug dealing. *See, e.g.*, *Salas*, 455 F.3d at 641–42 (district court correctly found that $20,000 found with cocaine in cooler was related enough to drug proceeds to convert it for sentencing). Thus, Probation did not err by converting this large quantity of cash—based on "the price generally obtained" for fentanyl ($65 per gram, as the PSR correctly noted)—into the requisite amount of drug weight. U.S.S.G. § 2D1.1 cmt. n. 5; *see, e.g.*, *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010).

Absent more, Cartwright cannot show prejudice. *See United States v. Abney*, No. 2:16-cr-31, 2018 WL 9815623, at *9–10 (E.D. Ky. Oct. 5, 2018) (petitioner suffered no prejudice where counsel did not object to drug quantity conversion because petitioner admitted that the proceeds found were to be used for drug trafficking).

### B. Firearm Enhancement (Ground Two)

Cartwright also contends his counsel was unconstitutionally ineffective for not objecting to the firearm enhancement. Doc. No. 60 at PageID 311. This, too, was not prejudicial.

If a criminal defendant possessed a dangerous weapon (including a firearm), his base offense level increases by two, per § 2D1.1(b)(1). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n. 11(A). "To apply the enhancement . . . the government must establish that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996) (citation and internal quotation marks omitted). Constructive possession includes "dominion over the premises where the item is located." *Id.* "Once the government shows that the defendant possessed a weapon during relevant conduct, a presumption arises that the weapon was connected with the offense of conviction." *United States v. West*, 962 F.3d 183, 188 (6th Cir. 2020) (citing *United States v. Moreno*, 899 F.2d 465, 470 (6th

Cir. 1990)). The defendant can overcome the presumption by showing "it is clearly improbable that the weapon was connected with the offense." *Id.* (quoting U.S.S.G. § 2D1.1 cmt. n. 11(A)).

Cartwright admitted that he owned the residence containing several firearms. *See* Doc. No. 39. He further admitted that he owned these weapons on October 17, 2019 when he committed these drug offenses. *Id.* at PageID 119; *see United States v. Branham*, 460 F. App'x 538, 544 (6th Cir. 2012) (Section 2D1.1(b)(1) applied where loaded handguns were found with drug proceeds in petitioner's house). Thus, the enhancement presumptively applied. *See West*, 962 F.3d at 188. Although Cartwright contends differently, his "mere argument" that the gun was unconnected to his drug trafficking falls short, especially where "the [G]overnment could have demonstrated" that the enhancement applied based on his admissions and notwithstanding any objection. *Riley v. United States*, --- F. Supp. 3d ---, 2022 WL 832511, No. 3:18-cv-01147, at *3 (M.D. Tenn. Mar. 21, 2022) (citations omitted). Accordingly, Cartwright suffered no prejudice.

### C. Drug Premise Enhancement (Ground Three)

Cartwright next argues that there was insufficient evidence to apply the drug premises enhancement, U.S.S.G. § 2D1.1(b)(12). Doc. No. 60 at PageID 313. The record contradicts that contention.

Section 2D1.1(b)(12) applies "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" "[A]nyone who '(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance'" falls within its ambit. *United States v. Bell*, 766 F.3d 634, 636–37 (6th Cir. 2014) (quoting *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013)). Drug manufacture or distribution "need not be the sole purpose" for maintaining the premises. U.S.S.G. § 2D1.1 cmt. n. 17. If it is a "primary or principal use[,]" the enhancement applies. *Id.*

8

Cartwright, in his plea agreement, conceded that he owned the house full of fentanyl, firearms, cash, and drug dealing implements. Doc. No. 39 at PageID 119. The presence of these "tools of the trade" connected Cartwright's home with fentanyl trafficking. *Johnson*, 737 F.3d at 447 (finding that enhancement applied to defendant who had guns, drugs, cash, and scales in his home); *see also Bell*, 766 F.3d at 637 (same).

In Cartwright's reply, he implies that the presence of thousands of dollars in cash found inside his residence can have an innocent explanation. Doc. No. 64 at PageID 377. True. But this explanation becomes far less plausible when this large amount is found alongside scales, guns, and fentanyl. *See Bell*, 766 F.3d at 637 ("[W]hen these items are found together in the house of a known drug dealer, they take on a different hue, providing strong circumstantial evidence that he used the home to make and distribute [drugs]"). Like all his other objections, Cartwright's admissions in his plea agreement showed that the enhancement applied, so any failure to object was not prejudicial. *See, e.g.*, *Whyte v. United States*, No. 19-5682, 2020 WL 3470322, at *2 (6th Cir. Feb. 5, 2020) ("Counsel is not constitutionally ineffective for failing to raise a meritless objection" (citing *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013))).

### D. Mitigating Evidence

The record undercuts Cartwright's final challenge—that his counsel failed to present mitigating evidence. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). In fact, his counsel offered mitigating evidence of his character during sentencing. *See* Doc. No. 62 at PageID 347–51. Nonetheless, Cartwright's challenge fails for a more fundamental reason: "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson*, 730 F.3d at 547 (quoting *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012)) (citing *Lynn v. United States*, 365 F.3d 1225, 1238 (11th Cir. 2004)).

The mere allegation that his counsel did not present mitigating evidence—in the face of a contrary record—does not justify relief.

### E. Evidentiary Hearing

"An evidentiary hearing is required [in § 2255 proceedings] unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo*, 178 F.3d at 782 (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). Hearings are unnecessary "when a petitioner's claims 'cannot be accepted as true because they are contradicted by the record.'" *Ray*, 721 F.3d at 761 (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). Thus, "a district court may only forego a hearing where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (internal quotation marks omitted) (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017)).

For the reasons stated, Cartwright's allegations are "contradicted by the record[.]" *Id.* (quoting *MacLloyd*, 684 F. App'x at 559). Probation correctly applied the sentencing enhancements because Cartwright admitted that he owned the house, along with the guns, drug dealing implements, and cash inside. *See* Doc. No. 39 at PageID 119. Moreover, his counsel vociferously defended his character in the colloquy with the Court. *See* Doc. No. 62 at PageID 347–51. Thus, Cartwright's conclusory demand for an evidentiary hearing—in the face of a contrary record—is meritless.

### IV.

Based on the foregoing, Cartwright's motion is **DENIED**. Because reasonable jurists would agree with this conclusion, the Court **DENIES** Cartwright a certificate of appealability. The Court also **CERTIFIES** that any appeal would be objectively frivolous and finds that

Cartwright should be denied *in forma pauperis* status on appeal.   This case remains **TERMINATED** on the docket.

        **IT IS SO ORDERED.**

Date:   August 24, 2022                                  s/Michael J. Newman
                                                        Hon. Michael J. Newman
                                                        United States District Judge